The next case for argument is 18-2119 OBXtek v. United States. This is a case for argument 18-2119 OBXtek v. United States. We're ready whenever you are. Good morning, Your Honor. Michelle Lidekin for Appellant OBXtek. May it please the Court. This case turns on one question. Did GSA engage in discussions when it allowed multiple offerors to revise their individual subcontracting plans? We submit the answer is yes, regardless of whether the individual subcontracting plan was characterized as a responsibility factor. The individual subcontracting plan was required to be acceptable for an offeror to be eligible for award. Here, after receiving proposals and concurrent with the evaluation, before identifying potentially successful offerors, GSA notified multiple offerors their subcontracting plans contained significant weaknesses and deficiencies. Well, this was a step two in the analysis, right? The responsibility determinations came after they had evaluated and verified the top 65 highest technically rated offerors, right? And then they took that pool and they applied the responsibility determination. Am I wrong about that? Your Honor, a small correction. There were 71 offerors that were set aside. But it wasn't part of the initial determination. It came after they had identified the top 71 or 61 offerors, right? Yes, but they had not yet determined the offeror's final scores. This was a rather unusual procurement. Instead of submitting a narrative proposal with an explanation of how you would perform the contract, it was a self-scored proposal with a maximum of 83,100 points. Offerors where the top 71 were set aside based on their self-scored proposal. Concurrent with this process of reviewing the subcontracting plans, which were the only substantive proportion of the offeror's proposal, the agency was reviewing the backup documentation provided for the various categories where offerors could claim points. And that's how you get from 71 down to 61, is the points were verified. Ms. Lillian, as I understand it, your contention is, number one, we don't quarrel with the subcontracting plan being a responsibility determination issue. And you would recognize that when you're talking responsibility, there can be some, I'm not going to use the word discussions, there can be some conversations, if you will. How do you say the conversations went too far and that the subcontracting plan went too far? And merged into what you contend were improper discussions? Yes, Your Honor, that's correct. And GSA also does not dispute that it engaged in communications with offerors. They would say communications or conversations. Exchanges, communications. Our position is that there is no exception for communications about responsibility factors in the FAR. That has been something that has been created by the Court of Federal Claims, the GAO. The rule that this Court and the Court of Federal Claims and the GAO have also articulated is that discussions occur when an offeror is given the opportunity to revise its proposal. Here, the individual subcontracting plan was not something like a DCMA-approved cost accounting system. It was a detailed narrative document where an offeror was required to explain and justify and support its approach to how it was going to carry out subcontracting and performance. We think the Court should avoid the confusion that can occur when you have different rules based on whether something is a responsibility factor or a technical factor or some other factor. There is a bright line rule that's very easy to follow. If you allow an offeror to revise its proposal or an element of its proposal, as was done here, you're engaging in discussions. You're saying, give me an example, if you will, of what a particular allowance that was made here that you say was improper. Here, multiple offerors were told that they were parroting the GSA sample plan and they needed to go back and provide their own explanations for why they were choosing different numbers. One offeror was accused of simply copying and pasting from a sample plan. It's not the kind of clarifications, and exchanges were also covered in the FAR, allowing the agency to communicate with offerors about minor clerical errors if a number is missing. You're saying this went on beyond what you would say were acceptable clarifications? Yes, Your Honor. Let me ask you, what exactly, what relief were you asking for here? We're always at a little disadvantage when the cases get to us here at the Federal Circuit from the Court of Federal Claims. We don't know precisely where the procurement stands and maybe the government will tell us about that, but what relief do you want specifically? Do you want them to disqualify these people, or do you want to be added on as a qualified awardee? What are you asking for, ultimately? Either scenario would be appropriate here, Your Honor, because in discussions, at least four awardees were given the opportunity to correct their otherwise defective proposals and be selected for award. If the agency had not engaged in those unequal discussions, OBX would have been within the top 61 offerors with its existing score. Are you saying there should have been discussions with OBX about its problems, which were not under the subcontracting form? Yes, Your Honor. Once an agency begins discussions with an offeror, it's required to conduct discussions with all offerors. So what does that want? You would say we should send the case back to the Court of Federal Claims with directions to that court to, in turn, have the agency conduct clarification communications with your client? Well, there's two options here, Your Honor. The first would be to say any offeror who is given this unfair opportunity should be excluded, and then OBX Tech is in the top 61. Nobody says you can't have discussions. The requirement is, is it not, that you have discussions with one, you have to have discussions with others, right? Right, Your Honor. So the other option would be to engage in discussions with all of the offerors, which would give OBX Tech the opportunity to correct the significant weaknesses and deficiencies that were identified in this proposal. Well, wait a minute. But if you're going to have discussions, the discussions here are centered on the subcontracting portion of the proposal, right? So would the remedy be that they have to have discussions with all people about the subcontracting proposal? Well, Your Honor, the... I mean, why does discussions on one aspect and then equalizing it and having discussions with everybody else open up the universe? Because under the FAR, discussions, once they're opened, are not limited to a single issue. In another procurement, you wouldn't have discussions with an offeror about its staffing plan, but not have to discuss with another offeror if it had a significant weakness, weakness with its key personnel. The standard is, once you open discussions, you need to have discussions with all offerors. And what does that mean in this context? It means a lot of conversation. I mean, is it clear? Have you identified what if the government had a specific problem with your proposal and what would have happened if the government had come back and told you about that problem? Is that what you're alleging here happened with your client? Yes, Your Honor. OBX Tech lost points in several areas. But the issue here is the product service code and leading edge technology experience factors. OBX Tech lost a combined 1,600 points there. The issue was a missing FPDS report and not including a CPAR. Those are kinds of issues that could have very easily been corrected. But that's why issues like now, which fall within things that are scored for purposes of identifying the top offerors, are treated as the kinds of things that are part of the discussion over or communications about the technical evaluation. Because that's part of the technical evaluation. It goes to the points. There's no question of this. You want a bright line rule? There is a bright line rule that is consistently applied by the Court of Federal Claims and the Board of Contract Appeals. And that is in cases like this where it goes only to the responsibility determination and is not part of the scored value. Subcontractors did not affect their in-person score in this case. That's part of the responsibility determination and that is a place where you can have follow-up conversation to make sure they're accurate. So there is a bright line rule. You say you want a bright line rule, you know you want a different bright line rule. And your bright line rule would create so much more work if they have to open up the discussion with every individual contractor on every component of their technical evaluation, when the issues they have with these other people have nothing to do with their technical evaluation. So I have a problem with what you're requesting. It seems like it's a creative administrative nightmare for Commerce. I understand your concern, Your Honor, but there is existing case law that an agency is only required to discuss significant weaknesses and deficiencies with offerors. There's dozens of protests where an offeror has argued that it did not get meaningful discussions because it was not alerted to a rather minor weakness in its proposal. And those protests are denied because there is this rule that you are only required to engage in discussions with offerors. There's a line drawn by the CFC, GAO, and articulated by Judge Moore that if it deals with concluding what the best value is in that portion of the analysis and the points, that's separate from a responsibility determination which doesn't go there. Why isn't that an appropriate rule here? Because that's not a clear line, best value. The government is including this subcontracting plan requirement in the proposal. We're all striving for as clear lines as are appropriate. Even better yet, you could just say if the government has discussions with one person about one offeror about anything, it has to open up and have discussions with corrections on anything. Corrections, Your Honor, they could use clarifications. What we're dealing with here is an extensive revision of a portion of the proposal that was required to be eligible for award. So I understand the concern, but we're not asking for this to apply to every single circumstance. Well, if not, then I'm just going to the point that you said. One of your policy reasons for saying we need another line is because the line that others have settled on is not clear. And I'm just not sure, now you're muddying your line too, right? Your Honor, it's not clear and it's not supported by the FAR. The FAR does not provide a carve out for communications that deal with responsibility factors. If that was the intent of the FAR council, that would be what was put in there. Instead, the FAR specifically allows for clarifications to correct minor clerical errors. And it has parts 15.306 D and E, which do not allow material revisions to be conducted through clarifications. If possible, I would like to reserve my time. Thank you, Your Honor. Someone appeared to have left a note for me, Your Honors. Good morning, Your Honors. May it please the Court. Your Honors, OBX Tech's argument over time has become a little more nuanced, a little more focused. Especially today, here before this Court. We do believe that it still suffers from the three problems that we mentioned in our brief. That's blue and gold waiver, that is inconsistent with the statutes and regulations, and an issue of prejudice. But since, Your Honors, we're talking about the bright line, perhaps we could start. What about her last argument that there just doesn't exist in the FAR any carve out that allows for commerce to permit material revisions to contracts just because it's within the responsibility section? Right, Your Honor. And the Small Business Act. Is that correct? Does the FAR allow for such a carve out? Yes, because discussions are about, as Your Honor was talking about, the technical aspect of a proposal. Well, the FAR language, can we look at the FAR language? Oh yes, of course. What provision are you pointing to? 15306D, Your Honor. So this is a cropped quote, so tell me if I'm missing anything, but they define negotiations as exchanges between the government and offerors that are undertaken with the intent of allowing the offeror to revise its proposal. Now, does that necessarily exclude subcontracting stuff that we're talking about here? Well, Your Honor, we're looking specifically at D2 of 15306, which says, the primary objective of discussions is to maximize the government's ability to obtain best value based on the requirement and evaluation factors set forth in the solicitation. When we're talking about best value, Your Honor, and the requirements of the solicitation, we're talking about the meat and potatoes of what's being purchased here. Here, in this instance, we're talking about leading edge technology and other information technology services. So the question becomes, what is the best value in this procurement? What are our discussions going to try to maximize for the government? The best value in this particular procurement is defined by the RFP itself, the solicitation. But let me ask you, responsibility is defined, and this is out of a case, by an offeror's apparent ability and capacity to perform all contract requirements. Well, just speaking as a layperson, how does their ability or inability to perform all contract requirements not sort of breathe into the notion of what is the base value based on the requirement and evaluation factors? Well, if I could answer generally and then specifically, Your Honor, for this case. Generally, other responsibility factors might give some more information on this, like whether or not the company has the financial resources to do a contract. That is a general performance capability question, whether this company is going to survive doing this business. Not a specific question that whether or not this company has the knowledge or experience to do cloud computing, for instance. That is a technical question. Whether they can do the job at all seems to me to go to best value. I'm not sure how it's not, right? I mean, it can't be your best value to choose someone who's actually incapable of doing the job. No, but that's why it's a go or no go question in responsibility. If you can actually have a conversation with the government to try to explain, let me tell you why my cloud computing will meet your needs, GSA. That's something that can be negotiated. That's something that is subject to discussions. You can sit down and explain with the government evaluators through letters or what have you as to why your particular solution is the best value for the price that you're offering. Whether or not you have, for instance, financial resources to do a job, or in this case, whether or not you intend to use subcontractors per Congress' policy to use subcontracting, is an overall go or no go question. Whether or not you should be doing any government contract whatsoever. How does that differentiation that you're positing for us justify why there would be the discussion requirement in the first basket, but not in the second basket? Putting the Small Business Act aside, because most of our argument revolves around the fact that this is something that Congress said must be done, these negotiations. You're talking now about the subcontractors. What this contract specifically said for best value purposes. Who will be the offerors who receive contracts here? It says on page 1594 of the appendix, Your Honors. And about midway down that page, there is M2 basis for awards. It says at the last sentence of the first paragraph underneath M2, for the master contract, the highest technically rated offerors with a fair and reasonable price will be determined the best value basis for master contract. This is on 1594? Correct, Your Honor. If I can point you in the right direction again, do you see the M2 basis for award? It is the last sentence in that first paragraph underneath there, part of it is underlined. So what that is saying is that the best value in this procurement, who is going to get awards, are the companies with the highest technically rated offerors and a fair price. Would this come into the heading of a negotiated procurement? Yes, Your Honor. And to go off that, Your Honors, the best value here was to be determined by the ranking scores. If we talked about earlier with my colleague, the ratings were based entirely upon the technical aspects of this proposal. OBX text concedes that the small business subcontracting plans was not rated, not given a score. It does not fall within the rubric of what a best value is for this procurement. So certainly, definitely not for this procurement is the small business subcontracting plans part of the best value. They are not subject to discussions. But tell me what the rationale would be between differentiating that and the stuff that says... It's a big picture, Your Honor, right? Big picture. Congress has decided in the Small Business Act that it is the policy of the United States to have subcontractors and small business acting as, let me restart that. Congress has decided that small businesses and the different variations of them should be subcontractors in procurements. It's developed a policy that that is the policy of the United States. The intent of the Small Business Act is to get these small business subcontractors involved in large procurements such as Alliant 2. The Small Business Act instructs that for negotiated procurements and other non-negotiated procurements, so procurements that are not even subject to the concept of discussions whatsoever, that small business subcontracting plans should be involved. And there should be heavy negotiation between the agency and the contractor to make sure that these plans are maximizing the potential for these small business subcontractors to be involved in government procurements. What OB-X-TEC is asking for is to throw this out the window and have subcontracting plans become part of every single evaluation criteria that is ranked and compared against one another by sort of maximizing. Not maximizing. I'm hearing you, but you're not really responding to my question, so let me restate it. Which is fine, we put this under the bucket of certain things, but why the notion that prompts FAR to say if you have discussions with one, you have discussions with all. I guess it's a fundamental fairness thing. Why the subcontracting thing would be exempt from that or something different from that. The fact that Congress is trying to get more small subcontractors doesn't really answer it for me. Because it's a collateral requirement, Your Honor. It's not about the actual services or products that the agency is purchasing. And is that true of all responsibility determinations? Well, we have that outlier case that both parties discussed in the briefing, the Computer Science Corporation case at GAO, where the agency determined that it would consider small business subcontracting as an evaluation criteria, assigned scores to the plans, and then compared them against one another of the different offers. At that point, that agency made a determination that its best value included how much small business subcontracting... So the government agrees that in those circumstances that would be subject to the FAR requirement? Yes. The Computer Science Corporation case that we both discussed in our briefs, Your Honor, we think is consistent with our position. Yes, absolutely. At that point, the agency determined that its best value included small business subcontracting plans. Is it your position, Mr. Giraldi, that there could be any and all discussions about the subcontracting issue here? Big, small, in between? Yes. Yes, Your Honor. I mean, that's what the Small Business Act instructs. What the Small Business Act is looking for is maximizing the potential for these small businesses to be involved. I was going to use the example that we just discussed earlier, Your Honor, if you wouldn't mind, that there was a parroting back of a plan, a base plan for some of these offers. Well, there was an example small business plan included in the solicitation. And sure enough, some offers didn't provide enough information. That's what Ms. Lydian was talking about. Correct. Correct. But the FAR and the SBA envision negotiation with the offers to make sure that these plans are maximizing the potential, make sure that the numbers within them are attainable and they're not based on nothing. I think this sort of dovetails directly into what we were talking about in our blue and gold argument, Your Honor, that the solicitation here specifically noted that the small business subcontracting plans would be part of this responsible determination and that the plans would be reviewed to determine if they have concrete numbers in them. I had a couple more questions. I think Judge Moore had a question. Oh, yeah. Please. I hope you agree that the FAR says really the only difference between what it calls negotiations and discussions is that negotiations are negotiations if they take place before the establishment of the competitive range and they're called discussions if they take place after. Correct? Correct, Your Honor. Yes. So otherwise negotiations and discussions are really the same communications. It's just timing. It's the difference. Part of it is timing. Discussions do have that specific definition that we're talking about. What's the purpose of discussions as well? Not purpose because it says primary objective in the FAR. It doesn't say what the purpose is. It says primary objective. Can there be secondary objectives? Can there be alternative objectives? Well, that certainly implies that there is alternative objectives for discussions. So then the other problem I have with the FAR, I'm just trying to wrap my head around whether or not you have the ability, and I don't mean you personally, I mean the government, the ability to carve out these responsibility determinations. Oh, sorry. Let me finish. And so the other thing that's bothering me about the same section, which is the one that delineates that the only difference between negotiations and discussions are the timing, but it defines negotiations. Negotiations are exchanges in either a competitive or a sole source environment between the government and offerers that are undertaken with the intent of allowing the offerer to revise its proposal. That is exactly what we have here. Exactly. I don't see how it falls outside of that definition. Your Honor, I think the problem that I have with this argument is that we're not carving anything out. The Small Business Act trumps the FAR. It's bigger. It's a statute. It applies not only to negotiated procurements. Remember, Part 15 of the FAR here only applies to negotiated procurements. The SBA, the Small Business Act, applies to all procurements. It is a collateral requirement imposed by Congress on agencies to get small businesses involved in contracting. This right here, this entire section... The Small Business Act just says that you should communicate with them over subs. How does that impact whether that means you have to communicate with everybody over everything? The FAR doesn't preclude you from talking or from doing what the Small Business Act says you ought to do. The FAR doesn't conflict with that. The FAR just could be read as saying, but if you do that, you are now in the land of discussions. Okay. So, Your Honor, what about the examples of sealed bids then? In sealed bids, there are no discussions because 15 doesn't apply to them. Correct, Your Honor? You can check out of me. Go ahead. In this scenario, Your Honor, you receive all the bids, you open them, whoever is technically acceptable and the lowest price gets the offer. That's it. There's no negotiations. If a small business subcontracting plan is considered to be part of whether or not an offer is actually responsive to the solicitation, which is what OB-X-Tex is asking this Court to do, then those offers that don't have a perfect small business subcontracting plans would have to be rejected because there's no way to communicate with them in sealed bids. That's why we know that the Small Business Act is bigger. It applies all throughout procurement. I don't understand why a discussion would be needed. In that scenario, you just go with the best offeror that also meets the subcontracting plan. But why does the Small Business Act then require negotiation of plans? It doesn't meet that, Your Honor. The FAR Part 19, which applies to both sealed bids and negotiated procurements, requires negotiation of these plans, Your Honor. Based on this whole discussion this morning, it strikes me that the government's position then is not that all responsibility determinations are exempt from this FAR discussion requirement, but you're only justifying taking out this one bucket of subcontracting as being justified to exclude from the discussion requirement. Well, no, we haven't gone into the... Your Honor, there's been no research or any looking into the other responsibility factors and what is considered where they fall and what they do. What we're talking about here, where I draw the line, what the bucket I'm talking about is the Computer Science Corporation case. If you take it that far, if you take a small business subcontracting plan and you grade it and you compare it and you say Offer A is my awardee over Offer B because Offer A has a better subcontracting plan. So all this discussion about the subcontracting stuff has been only in that unique circumstance where subcontractors included as part of the initial best value evaluation? I'm not sure I understand your question, Your Honor. I thought we were talking in generally, not just about that one unique circumstance where subcontracting is part of the best value initial determination, but we're talking about responsibility determinations versus the other stuff that comes before. Correct. And there are other things besides subcontracting that come within this responsibility determination. So you put so much weight on the fact that the SBA stuff is unique and different, which kind of makes it fall apart. What I thought the government's position was is differentiating best value from responsibility. Absolutely, Your Honor. Yes, there is the more general concept that a responsibility issue is looking at whether or not that the particular offer itself could perform a contract. It's a go, no-go look. So all the stuff you said about the SBA is actually really not cooperative in terms of what you're asking us to decide, which is responsibility determinations are out. Well, Your Honor, the SBA, the Small Business Act shows why small business subcontract plans are a matter of responsibility. So the question of what we do with this case is whether we can easily decide it in the government's favor without making any pronouncements about responsibility determinations versus best value and just have an opinion that talks about what you've talked about. Oh, you absolutely could. Well, it seems to me that the key point for you here is you would say we would have a different case if the small business subcontracting issue was a scored matter. Correct, Your Honor. And that would result in a favorable decision perhaps for Ms. Littigan. You're saying that's the key point here. This was not something that was being scored. And I won't get into our blue and gold argument, but that's why we raised it, Your Honor, because the solicitation was very clear that this case fell into the standard bucket of we're looking at small business subcontracting plans as a matter of responsibility. Because it's not a scoring issue. Because it's not scored. If the solicitation had said, hey, score this, and we didn't do it, we would have a problem, Your Honor. The problem I have with that idea, and I'm not sure where I am on it, but the problem that jumps out at me is this was a pass-fail criteria. My son takes a class pass-fail. Even though he's not getting a score, I still would like to see him pass. So it is still one of the criteria you're using to come up with your best 50 or 61 or whatever. Because if you fail on that front, you're not included in the 61. Well, that's not how the solicitation defines what best value is. The definition of best value, again, Your Honors, says that it's the highest technically rated offers with a fair and reasonable price. The responsibility question comes separate from that. Okay, you have your best value. You've selected them. Can we even give these guys a contract? For another example, are they suspended or debarred from doing government contracts? That's a go, no-go question. Of course you want the answer to be yes, Your Honor. But there are other reasons why you need to look at something like that, like whether or not they're suspended. Are you finished? Mr. Kramolik, two questions. One, sort of housekeeping. What's the deal now with this procurement? Is it ongoing? Are these people being awarded contracts? Since July 1, 2018. We're approaching a billion dollars. Task orders have been awarded, Your Honor. So we're very far into it. Okay, so the contract's underway. Assuming for the moment the court were to disagree with you, what would be the relief to which the protester would be entitled in your view? I suggested that the most one could do would be to send it back to the Court of Federal Claims to go back to the agency and have a, quote, discussion, close quote, with the protester about the two problems in its submittal. Is that correct? Maybe more narrow than that, Your Honor. We're putting aside that we think we're correct on the merits, Your Honor. No, Your Honor, first off, OB-X Tech's small business subcontracting plan might suffer from the same problems as some of these other offers. It wasn't checked. I'm not talking about that. I'm talking about the problems that she's just saying, this litigant is just saying, we want to have discussions about the two things that led to us losing points from our score. As we pointed out in our brief, we do not believe that those two items themselves are significant weaknesses or deficiencies. So therefore, the agency would not even need to engage in discussions on those particular two items, which would leave OB-X Tech below the numbers. You're saying even if there are discussions on those points, they'd still be out of luck. And that's where we detail in our prejudice argument in our brief. So even if we send this back, it's all going to be a Pyrrhic victory, frankly, Your Honor. Also, there is the concept of limited discussions. The agency would have to make a decision as to where we'd want to do discussions. Just because the agency does discussions in one area of the proposal does not necessarily mean it needs to do it in another. So it could limit it to as long as it's a subtracting plan, as Your Honor previously noted. Thank you for your time, Your Honors. I would like to begin with the issue that took up a lot of my opposing counsel's time, namely the Small Business Act. OB-X Tech is a former small business. We fully support contracting to small businesses. And the Small Business Act and the corresponding FAR 19.7 contemplate these negotiations about subcontracting plans occurring after the identification of the apparent successful offerors. They can even occur after someone is already selected for award. So the idea that requiring discussions on all issues, if an agency needs to discuss an individual subcontracting plan, it doesn't pass muster. It would not create this parade of horribles because the law currently allows agencies to negotiate those plans. The problem is here the timing. GSA could have waited until it had its 61 or 60 apparent successful offerors and then allowed them all to correct their unacceptable, their failure subcontracting plans. Instead, GSA did that concurrent with its evaluation. And that's what created the main problem for GSA here. Mr. Grimaldi, I think this is what he said. He said, look, the key here is that we just look at, we don't have to go global on this. We can just look at this particular situation. And he's saying the key point here is that the subcontracting plan was not one of the scored issues. And he said, I think quite frankly, that you would win if it had been because you would have been entitled to the discussions. But here it was not. What is your answer to that? This was not one of the scored issues. It was something separate and apart from that. Yes, Your Honor, that takes us back to the main argument we make here is that this distinction between scored and not scored responsibility and technical is a distinction without a difference. The issue is whether an agency allows an offeror to revise its proposal and gain eligibility for award. And that's what the agency did here. The ability to just characterize something as a responsibility factor in one procurement and not in another creates these arbitrary and inconsistent outcomes. These offerors were ineligible for award. They submitted failure homework assignments. They were not acceptable. And GSA gave them the opportunity to correct those problems. And on the issue of prejudice, the Court of Federal Claims in Square One Armoring has held that you look at the cumulative impact of significant weaknesses and deficiencies. What's this case? What's the site? Square One Armoring 123 Fed Claim 309 from 2015. And here it was the combination of the deductions of the PSC and the product service code and the leading edge technology experience that kicked OB-X tech out of the top 61. It had an acceptable subcontracting plan. So we submit that those deductions constitute significant weaknesses and deficiencies.  And finally, on this issue of the go, no-go, meat and potatoes, this was not a check the box. Did you submit a subcontracting plan or didn't you? It was a detailed review looking at whether things were explained and justified and substantiated. And that's why we think it goes to the best value if you're going to even rely on that distinction to begin with. And finally, I have 13 seconds so I can say we don't believe that blue and gold applies because there was no way for offerors to know the agency was going to engage in communications and allow offerors to revise their subcontracting plans to regain eligibility award. Thank you.